IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| MICHELE ALLISON, o/b/o C.D.S., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14-04205-CV-C-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Michele Allison ("Allison") seeks judicial review of the Commissioner of Social Security's ("Commissioner") denial of an application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f, which she filed on behalf of her son, C.D.S. The Administrative Law Judge ("ALJ") found that C.D.S. suffered from several severe mental impairments, but they did not functionally equal the severity of any listed impairments. The ALJ thus found C.D.S. not disabled.

Because substantial evidence supports the ALJ's decision, the Commissioner's denial of benefits is AFFIRMED.

### Factual and Procedural Background

A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary. Allison filed C.D.S.'s application on July 28, 2011, alleging disability based upon vision problems and mental ailments. The Commissioner denied the application, and Allison subsequently requested an administrative hearing. On April 29, 2013, after the hearing, the ALJ affirmed the denial of benefits. The Social Security Administration Appeals Council then denied review on June 11, 2014, leaving the ALJ's decision as the

Commissioner's final decision. Since Allison has exhausted all administrative remedies, judicial review is now appropriate under 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Analysis

The childhood disability analysis entails a three-step process. *See Moore ex. rel. Moore v. Barnhart*, 413 F.3d 718, 721 (8th Cir. 2005) (citing 20 C.F.R. § 416.924). First, the Commissioner determines whether the child is engaged in substantial gainful activity. *Id.* Second, if the child is not, then the Commissioner considers whether he suffers from any severe impairments. *Id.* Third, if the child does have a severe impairment or impairments, then the Commissioner must determine whether the impairment or a combination of impairments medically or functionally equals the severity of an impairment listed in the regulations. *Id.*

An impairment is "functionally equal" to a listing if it results in two "marked" limitations *or* one "extreme" limitation in the following "domains" of functioning: (1) "acquiring and using

2

Case 2:14-cv-04205-DGK   Document 19   Filed 07/21/15   Page 2 of 9

information;" (2) "attending and completing tasks;" (3) "interacting and relating with others;" (4) "moving about and manipulating objects;" (5) "caring for yourself;" and (6) "health and physical well-being." *See* 20 C.F.R. § 416.926a(a), (b)(1). A limitation is "marked" if it "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). A limitation is "extreme" if it "interferes *very* seriously with the [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i) (emphasis added).

Here, the ALJ found that C.D.S. was not engaged in gainful activity and he had two severe mental impairments: impulse disorder and intermittent explosive disorder. R. at 12-13. Proceeding to the third step, the ALJ found that C.D.S. had a marked limitation in "attending and completing tasks," but he suffered from *less than* marked limitations in the remaining domains of functioning. R. at 17-24. The ALJ thus found C.D.S. was not disabled.

Allison challenges the ALJ's determinations at steps two and three. As for step two, Allison argues that the ALJ erred by not recognizing C.D.S.'s attention deficit hyperactivity disorder ("ADHD") as a severe impairment. With respect to step three, Allison argues that the ALJ erred by: (1) improperly discrediting the opinion of C.D.S.'s treating psychiatrist Jyotsna Nair, M.D. ("Dr. Nair"); and (2) failing to find at least marked limitations in the functional domains of "interacting and relating with others," "caring for yourself," and "acquiring and using information." The Court addresses each argument in turn.

**I. The ALJ's omission of ADHD as a severe impairment does not require remand.**

Allison contends that Dr. Nair's diagnosis of ADHD is sufficient to warrant "severe impairment" status, and thus, the ALJ erred in not acknowledging his ADHD as such.

Assuming without deciding that the ALJ erred by failing to explicitly list C.D.S.'s ADHD as a severe impairment, any misstep was harmless. Since the ALJ found C.D.S.'s impulse

3

disorder and intermittent explosive disorder to be severe impairments, R. at 12, she proceeded to step three. R. at 13-25. At this stage, the ALJ conducted a searching analysis of the record evidence to determine whether these impairments or other non-severe impairments functionally equaled any listed impairments. R. at 13-24. In so doing, the ALJ explicitly recognized the records containing Dr. Nair's ADHD diagnosis and the attendant limitations imposed by it. R. at 14. Because it is clear that the ALJ considered these records and performed a searching step three analysis with them in mind, any failure to explicitly mention C.D.S.'s ADHD diagnosis was harmless. *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (holding that a deficiency in opinion writing that does not affect the outcome does not require reversal); *cf. Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730 (8th Cir. 2003) ("[T]he dispositive question remains whether [the claimant's] functioning in various areas is markedly impaired, not what one doctor or another labels the disorder.").

**II. Substantial evidence supports the ALJ's step three analysis.**

    **A. The ALJ did not err in discounting Dr. Nair's opinion.**

Allison next contends that the ALJ erred in discounting Dr. Nair's opinion. Dr. Nair, who treated C.D.S.'s psychological impairments for several years, completed a "Childhood Disability Evaluation Form" on June 21, 2012. Dr. Nair checked boxes indicating that C.D.S. exhibited: (1) marked limitations in "acquiring and using information;" (2) marked limitations in "attending and completing tasks;" (3) less than marked limitations in "interacting and relating with others;" (4) marked limitations in "caring for yourself;" and (5) less than marked limitations in "health and physical well-being." R. 369-70. Dr. Nair also indicated that she lacked sufficient information to determine the degree of C.D.S.'s limitations in the domain of "moving and manipulating objects." R. at 370. Despite being afforded ample space to provide a narrative discussion or supportive findings, Dr. Nair's opinion lacks either. R. at 369-70, 372.

4

Case 2:14-cv-04205-DGK   Document 19   Filed 07/21/15   Page 4 of 9

The ALJ gave great weight to portions of Dr. Nair's opinion while giving little weight to other portions. R. at 16. In particular, the ALJ found that Dr. Nair's findings in the domains of "attending and completing tasks," "interacting and relating with others," and "health and physical well-being" to be sound and well-supported by the record, including Dr. Nair's treatment notes and C.D.S.'s school records. R. at 16. The ALJ, however, was not persuaded by Dr. Nair's other conclusions, finding that the limitations in the remaining domains[1] were inconsistent with Dr. Nair's clinical findings and founded primarily upon Allison's subjective allegations. R. at 16.

Dr. Nair qualifies as a treating source under the regulations. An opinion from a treating physician is generally entitled to controlling weight if it is well-supported and not inconsistent with other evidence in the record. *See* 20 C.F.R. § 416.927(c)(2). An ALJ, however, may discount such an opinion if: (1) it is not supported by medically acceptable laboratory and diagnostic techniques; (2) if the opinion is inconsistent with other substantial evidence; or (3) if it is inconsistent with, or unsupported by, the source's treatment notes. *Id.*; *Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009). An ALJ must give "good reasons" for discounting a treating source's opinion. *Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002).

Allison challenges the treatment of Dr. Nair's opinion on "acquiring and using information" and "caring for yourself." But the ALJ provided sound and well-supported reasons for discounting those portions of Dr. Nair's opinion. With respect to "acquiring and using information," there is no narrative discussion, treatment notes, or other record evidence showing that C.D.S. had "marked" limitations in this functional area. Deficits in this area are manifested

---

[1] These domains included "acquiring and using information," as well as "caring for yourself." R. at 16. The ALJ, however, also mistakenly referenced "attending and completing tasks" as part of the opinion deserving "little weight." R. at 16. But it is clear from the preceding paragraph and other portions of her step three analysis that including this domain in the "little weight" category was merely a typographical error.

5

by—among other things—placement in special education classes or counseling; special accommodations to ensure the child could perform on par with other students; a lack of development in the skills necessary to read, write, and do math; and an inability to use words to ask questions or give answers. S.S.R. 09-3P, 2009 WL 396025, at *4-6 (Feb. 17, 2009). Although C.D.S. received counseling services and periodically failed to follow directions, he was a "model student" when properly medicated. R. at 194. And even when he exhibited behavior problems, he still showed an interest in story hour, reading books, and answering questions. R. at 196, 200, 297. Moreover, the record does not show any shortcomings in C.D.S.'s preparedness to learn basic academic skills or any issues with communication. Given this paucity of evidence on difficulties in "acquiring and using information" and Dr. Nair's lack of supporting explanation, it is difficult to reconcile her "marked" limitation finding with the record evidence and her own observations. Thus, the Court finds no err with respect to this domain.

Likewise, Dr. Nair's finding of marked limitations in the "caring for yourself" domain is similarly unsupported. This domain includes a child's "emotional ability to engage in self-care activities," as well as his ability to avoid physical harm and cope with his emotions. S.S.R. 09-7P, 2009 WL 396029, at *3-5 (Feb. 17, 2009). But neither Dr. Nair's treatment notes nor her opinion contain any findings about deficits in these areas. R. at 270-78, 295-335, 373-86. On the contrary, Dr. Nair repeatedly noted that C.D.S. was pleasant, quiet, and calm during appointments, and he exhibited no self-harming tendencies. R. at 272, 277, 298-99, 373, 376-77, 385. On one occasion, Dr. Nair even observed that although C.D.S.'s brother hit him with a toy, C.D.S. did not react inappropriately. R. at 270. This arguably indicates an ability to cope with anger. And although C.D.S. did engage in some self-destructive or dangerous behavior during periodic temper tantrums at school, R. at 184-93, those tendencies were blunted by medication. R. at 54, 194. In absence of supporting clinical notes from Dr. Nair or school records, it was

reasonable for the ALJ to conclude that Dr. Nair based her opinion on Allison's subjective allegations. And since the ALJ discounted Allison's credibility—an unchallenged finding—Dr. Nair's reliance on her allegations supplies another basis to discount Dr. Nair's opinion. *See Andrew v. Colvin*, —F.3d—, 2015 WL 4032122, at *4 (8th Cir. July 2, 2015) ("[T]he ALJ did not err in discounting Dr. Money's opinion on the basis that he relied to some degree on Andrews' subjective allegations…."). Thus, the ALJ's decision to discount Dr. Nair's opinion regarding this domain of functioning was within "the available zone of choice." *See Grave ex rel. K.K.O.F. v. Colvin*, No. 12-1094-DGK-SSA, 2013 WL 5211617, at *3 (W.D. Mo. Sept. 13, 2013) (citing *Collins*, 335 F.3d at 730).

### B. Substantial evidence supports the ALJ's finding that C.D.S. had less than marked limitations in the challenged functional domains.

Allison contends that the ALJ erred in finding that C.D.S. had less than marked limitations in certain functional domains. In particular, Allison contends that the ALJ "minimized" evidence that showed marked limitations in the domains of "interacting and relating to others," "caring for yourself," and "acquiring and using information." Moreover, Allison accuses the ALJ of misconstruing the record evidence to support her position.

The Court first addresses the ALJ's alleged "minimization" of record evidence. Allison asserts that the ALJ did not fully consider all the records from C.D.S.'s teachers and completely ignored a report from a one-time speech consultant, Stephanie Zink. But the record contradicts this argument. The ALJ cited and carefully considered all of C.D.S.'s school records. R. at 15. While Allison disagrees with the *inference* that the ALJ drew from those records, that does not mean the ALJ manipulated the record evidence in writing her opinion. As for Stephanie Zink's report, the ALJ's failure to discuss it does not mean she ignored it. *See Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). Far from it, the ALJ's careful analysis and evenhanded opinion

7

suggests that she amply considered all the record evidence, including this report. And in any event, the report provides little support to C.D.S.'s disability application; it merely corroborates other record evidence that he struggled with social interactions prior to being properly medicated. R. at 338-39.

Allison's second argument fares no better. She contends that the ALJ "misconstrued" the record by claiming that medications were "fairly" effective in controlling C.D.S.'s disorders. But the record supports the ALJ's finding. Towards the beginning of the alleged disability period, C.D.S. had repeated tantrums, struggled to behave and concentrate in school and daycare, and acted defiantly and aggressively towards family members. R. at 303-21, 375. These difficulties caused Dr. Nair to increase C.D.S.'s dosage of Kapvay, R. at 376, but some of his aggressive and defiant behavior continued through the end of 2011. R. at 338-39. From February 2012 until August 2012, C.D.S. showed some aggressive behavior, but Dr. Nair repeatedly remarked that the medications were mostly effective. R. at 379-83. Dr. Nair then prescribed Abilify in addition to Kapvay. R. at 383. This combination provided near optimal control of C.D.S.'s symptoms from August 23, 2012, until November 2, 2012. R. at 383-85. During this period, his teacher's labeled him as a "model student" because he followed their directions, set an example for other children, socialized well with them, assisted teachers with activities, and showed no behavioral problems. R. at 194.

During a November 2012 doctor's appointment, Allison acknowledged that C.D.S.'s behavior had dramatically improved, but she wanted the Kapvay dosage decreased because it caused drowsiness. R. at 385. Dr. Nair decreased the dosage, but noted that she would resume the old dosage if his behavior regressed. R. at 385. That is exactly what happened; his teachers observed a dramatic increase in behavioral problems starting in December 2012. R. at 194. They subsequently sent Dr. Nair a letter requesting that she increase his dosage of Kapvay. R. at

8

194-95. Allison even conceded that C.D.S. became aggressive after the dosage decrease. R. at 54. This evidence supports the ALJ's finding on the effectiveness of medication.

The medication's effectiveness also supports the ALJ's finding of less than marked limitations in the above challenged domains. The combination of Kapvay and Abilify resulted in less aggression, better concentration, and compliant behavior at school. R. at 54, 194-95, 383. And although Allison cites to continued behavior problems before the administrative hearing, this evidence arguably supports the ALJ's position because it shows his condition *worsened* after the Kapvay dosage decrease. R. at 184-93; *cf. Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (noting that if the evidence supports two plausible but contradictory inferences the court must affirm the ALJ's finding). Even without the proper medication dosage, the record still supports a finding of less than marked limitations in the challenged domains. C.D.S. was, at most, periodically disruptive at school because although he threw temper tantrums on occasion, they were far from "incapacitating" and he had other days of great behavior. R. at 184-93; s*ee Collins*, 335 F.3d at 730. Additionally, Dr. Nair's *objective* findings during appointments showed that C.D.S. was mostly well-behaved, pleasant, alert, and oriented. R. at 272, 298, 373, 376, 377, 385. While other evidence supports an opposite inference, the ALJ's decision was nonetheless within the available zone of choice.

In sum, substantial evidence supports the ALJ's step three analysis.

## Conclusion

For the foregoing reasons, the Commissioner's denial of benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date: July 21, 2015  /s/ Greg Kays
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT